# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN J. QUINTANA, on behalf of herself,<br><br>                                    Plaintiff,<br><br>v.<br><br>APPEALS COUNCIL OFFICE OF DISABILITY ADJUDICATION,<br><br>                                    Defendant. | Case No.:  3:15-cv-01195-H-PCL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, REMANDING FOR FURTHER PROCEEDINGS**<br><br>[Doc. Nos. 21, 23] |

On May 29, 2015, Kristin Quintana ("Plaintiff"), proceeding pro se, filed a complaint pursuant to 42 U.S.C § 405(g) requesting judicial review of the Appeals Council Office of Disability Adjudication's ("Defendant") final decision denying her disability benefits.  (Doc. No. 1.)  Defendant filed the administrative record on July 11, 2016, (Doc. No. 16), and filed the operative amended answer on July 13, 2016, (Doc. No. 18).  On August 30, 2016, Plaintiff filed a motion for summary judgment, requesting the Court reverse Defendant's final decision and order the payment of benefits, or alternatively, remand for further proceedings.  (Doc. No. 21.)  On September 23, 2016, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion, requesting the Court affirm the Commissioner's final decision.  (Doc. Nos. 23,

24.)  On November 11, 2016, Plaintiff filed a response in opposition to the cross-motion. (Doc. No. 34.)  On November 15, 2016, Defendant filed a reply.  (Doc. No. 36.)  On November 17, 2016, Plaintiff filed a request to amend her opposition.  (Doc. No. 38.) The Court granted the motion, (Doc. No. 39), and Plaintiff filed her amended brief on January 13, 2017, (Doc. No. 49).  Defendant filed a reply on January 25, 2017.  (Doc. No. 51.)  For the reasons below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's cross-motion for summary judgment, and remands to the ALJ for further proceedings.

## BACKGROUND

On June 2, 2011, Plaintiff applied for disability insurance benefits, as well as supplemental security income benefits, claiming she became disabled on June 15, 2009. (AR177-91) (but see AR185) (SSI application stating onset date of June 1, 2009).  The Social Security Administration initially denied Plaintiff's application on August 29, 2011, and again upon reconsideration on May 31, 2012.  (AR92-99.)  Plaintiff then requested a hearing before an ALJ.  (AR100-06.)

On July 30, 2013, an ALJ held a video hearing where Plaintiff appeared with counsel and testified.  (AR60-77.)  At the hearing, the ALJ also heard telephonic testimony from a vocational expert.  (AR73-76.)  In a decision dated August 26, 2013, the ALJ found that Plaintiff did not have an impairment or combination of impairments that equaled the severity of one of the listed impairments in 20 C.F.R. Part 404.  (AR39-47.)  In light of the lack of severity of her impairments, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work.  (AR42.) Although Plaintiff could not perform past relevant work, (AR46), the ALJ determined that Plaintiff was not disabled pursuant to Medical-Vocational Rule 201.28, (AR46-47).

On October 11, 2013, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (AR34.)  Upon requesting review by the Appeals Council, Plaintiff also submitted additional medical records by Dr. Kotha, Dr. McSweeney, and Nurse Practitioner Lapadat.  (AR5, 998-1074.)  The Appeals Council included this additional

evidence in the record.  (AR5.)  On April 1, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final.  (AR1-5.)

## DISCUSSION

### I.   THE LEGAL STANDARD FOR DETERMINING DISABILITY

"A claimant is disabled under Title II of the Social Security Act if [s]he is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months.'"  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(1)(A)).  "To determine whether a claimant meets this definition, the ALJ conducts a five-step sequential evaluation."  Id.; see 20 C.F.R. §§ 404.1520, 416.920.  The Ninth Circuit has summarized this process as follows:

> The burden of proof is on the claimant as to steps one to four.  As to step five, the burden shifts to the Commissioner.  If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps.  The five steps are:
>
> Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.
>
> Step 4.  Is the claimant able to do any work that he or she has done in the past?  If

so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.[1]

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (citations omitted); see also 20 C.F.R. §§ 404.1520, 416.920.  As part of step four, the ALJ must determine the claimant's RFC, i.e. the most a claimant can do despite her limitations.  See 20 C.F.R. § 404.1545; Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks omitted).

## II.   STANDARDS OF REVIEW FOR SOCIAL SECURITY DETERMINATIONS

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in federal district court.  See 42 U.S.C. § 405(g).  "As with other agency decisions, federal court review of social security determinations is limited."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,

---

[1] "At step four, the ALJ must consider the functional limitations imposed by the claimant's impairments and determine the claimant's residual functional capacity."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).

1098 (9th Cir. 2014).

Courts will uphold a disability determination "unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and the evidence that undermines the Commissioner's conclusions. Garrison, 759 F.3d at 1009. "Where the evidence as a whole can support either a grant or a denial, we may not substitute our judgment for the ALJ's." Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison, 759 F.3d at 1010 (quoting Shalala, 53 F.3d at 1039).

In addition, even when the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless. Treichler, 775 F.3d at 1099; see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." Molina, 674 F.3d at 1115 (internal quotation marks omitted). The party challenging the ALJ decision bears the burden of showing an error was harmful. Id. at 1111.

Where a plaintiff pursues her claims pro se, courts generally construe the party's papers liberally. See Hebbe v. Pillar, 627 F.3d 338, 342 (9th Cir. 2010); accord Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) ("[W]e have an obligation where the petitioner is pro se … to construe the pleadings liberally and afford the petitioner the benefit of any doubt.").

///

///

### III.  ANALYSIS

In denying Plaintiff's disability application, the ALJ's analysis proceeded through each of the five steps.  At step one, the ALJ determined as a threshold that Plaintiff was not working.  (AR41.)  At step two, the ALJ found the only severe impairment Plaintiff suffered from was a meniscus tear.  (Id.)  At step three, the ALJ found that none of Plaintiff's impairments, independently or in combination, met one of the listed impairments.  (AR42.)  Next, in order to complete step four, the ALJ determined that Plaintiff's RFC allowed her to perform the full range of sedentary work.  (Id.)

In so finding, the ALJ rejected Plaintiff's alleged disability.  Plaintiff alleged that her disability arose from two sources: fibromyalgia and musculoskeletal injuries resulting from two car accidents.  (See generally AR63-73.)  Plaintiff claimed these conditions resulted in debilitating pain that prevented her from engaging in many basic activities, including sitting or concentrating for long periods of time.  (Id.)

The ALJ determined that neither of Plaintiff's conditions justified the extent of Plaintiff's alleged pain.  The ALJ dismissed Plaintiff's fibromyalgia claim because Dr. Alistwani, an examining physician, and two State Agency medical consultants found the diagnosis of fibromyalgia was not supported.  As for the Plaintiff's musculoskeletal complications, the ALJ characterized them as "unremarkable," (AR43), and "entirely normal," (AR44).  The ALJ concluded at step four that Plaintiff was unable to perform her past employment.  (AR46.)  At step five, however, the ALJ found that Plaintiff was not disabled, pursuant to Medical-Vocational Rule 201.28.  (AR46-47.)

Plaintiff claims the ALJ erred by discrediting the opinions of her treating physicians, Dr. Kotha and Dr. McSweeney.  Dr. Kotha was Plaintiff's treating rheumatologist and diagnosed Plaintiff with fibromyalgia.  Dr. McSweeney was Plaintiff's treating orthopedic surgeon and opined that she was disabled on account of her musculoskeletal injuries.  Plaintiff also challenges various factual findings by the ALJ.

///

///

A. FIBROMYALGIA IMPAIRMENT

Plaintiff argues her primary impairment stems from symptoms of fibromyalgia. (See generally AR63-73.)  Fibromyalgia causes inflammation of fibrous connective tissues resulting in symptoms including chronic pain, fatigue, stiffness, and sleep disturbance.  See Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).  At present, there is no laboratory test to confirm a condition of fibromyalgia and diagnosis is based on a patient's subjective reports of pain and other symptoms.  Id.  Given the lack of objective medical indicators, the Social Security Administration issued a Policy Interpretation Ruling on July 25, 2012 providing guidance on how to determine if a person has a medically determinable impairment of fibromyalgia.  SSR 12-2p, 77 Fed. Reg. 43640 (July 25, 2012).  This ruling established the criteria for a finding of fibromyalgia: an applicant must have (1) a history of widespread pain, (2) at least 11 positive trigger points[2] on physical examination, and (3) evidence that other disorders that could cause the symptoms were excluded.  Id.

Dr. Kotha was Plaintiff's treating rheumatologist and documented Plaintiff's diagnosis of, and ongoing treatment for, fibromyalgia.  (AR301-04; AR522-33; AR981-994; AR998-1001; AR1002-1021.)  In a July 13, 2011 consultation letter, Dr. Kotha described Plaintiff as having symptoms consistent with fibromyalgia, including mental fogginess, fatigue, and pain in her extremities.  (AR533.)  Dr. Kotha documented that Plaintiff "has tender trigger point positive for fibromyalgia," but did not document the exact number of positive trigger points.  (Id.)  Finally, Dr. Kotha ruled out the possibility of these symptoms being caused by other autoimmune diseases.  (Id.)  Although Plaintiff initially responded positively to treatment, (AR532), Dr. Kotha's most recent letter said Plaintiff's condition was deteriorating, (AR1000).  As of December 26, 2013, Dr. Kotha described Plaintiff as having severe fatigue, chronic pain, and positive trigger points.  He

---

[2] Trigger points, also referred to as tender points, include 18 specific points on the body that physicians examine to determine if physical pressure results in pain.  See SSR 12-2p.

concluded that "[Plaintiff] fulfills criteria of fibromyalgia and is going on (sic) for many years."  (Id.)[3]  Plaintiff no longer responded to treatment and Dr. Kotha opined that she was unable to work and would likely be permanently disabled.  (Id.)

Despite Dr. Kotha's opinion, the ALJ concluded that Plaintiff did not suffer from fibromyalgia.  Whether an ALJ properly discredited a treating physician's opinion is a question of law.  Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Meschino v. Apfel, 1998 WL 513969, *7 (N.D. Cal. 1998) ("The opinion of Dr. Grotz, as that of a treating physician, is entitled to special weight.  The ALJ did not provide legitimate reasons for disregarding it.  Thus, she committed legal error.").  The Ninth Circuit distinguishes among three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996); see also 20 C.F.R. § 404.1502 (defining treating, examining, and nonexamining sources).  Generally, the opinions of treating physicians are given more weight than the opinions of examining physicians, which are in turn given more weight than the opinions of nonexamining physicians.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003).  Treating physicians' opinions, in particular, are given "special weight" and the ALJ must justify a decision to disregard them.  Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

If a treating physician's opinion is not contradicted by another doctor, the ALJ may only disregard the opinion if he justifies that decision with "clear and convincing reasons supported by substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715, 725

---

[3] Plaintiff's counsel introduced the most recent letter from Dr. Kotha at the review stage before the Appeals Council so the ALJ did not have the opportunity to review it.  However, because the Appeals Council considered this evidence and incorporated it into the record "that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Brewes v. Comm'r of Social Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

3:15-cv-01195-H-PCL

(9th Cir. 1998) (internal quotation marks omitted).  Even if a treating physician's opinion is contradicted by another doctor, the ALJ may still only disregard it by providing "'specific and legitimate reasons' supported by substantial evidence in the record."  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  "The ALJ may meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Furthermore "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

As Plaintiff's treating physician, Dr. Kotha's opinion was entitled to "great weight" and could only be disregarded for "specific and legitimate reasons supported by substantial evidence in the record."  Reddick, 157 F.3d at 725.  The ALJ disregarded Dr. Kotha's opinion because it conflicted with the opinions of various examining and nonexamining doctors.  First, the ALJ credited the opinions of an examining physician, Dr. Alistwani, and two nonexamining physicians, Drs. Lizarraras and Walker, who concluded that Plaintiff did not meet the diagnostic criteria for fibromyalgia. (AR45.) Second, the ALJ claimed that Dr. Sabourin, an examining orthopedic surgeon, had found no "objective sign(s) of any significant impairment."  (AR44-45.)  Because these doctors' opinions are entitled to less weight than a treating physician, and because they made no independent medical findings undermining Dr. Kotha's conclusions, they do not amount to specific and legitimate reasons.

Reliance on Dr. Alistwani's conclusion that Plaintiff did not suffer from fibromyalgia does not amount to specific and legitimate reasons to discredit Dr. Kotha's opinion.  When Dr. Alistwani examined Plaintiff on April 18, 2012, he noted that Plaintiff complained of chronic pain and severe fatigue and determined that Plaintiff was not exaggerating.  (AR610-11.)  Although Dr. Alistwani concluded Plaintiff did not suffer from fibromyalgia, he made no independent medical findings as to Plaintiff's

trigger points and did not conduct additional tests to identify alternative explanations for Plaintiff's pain.  As a result, his opinion does not amount to substantial evidence to support the ALJ's conclusion.  The opinions of the two state agency nonexamining physicians, Drs. Lizarraras and Walker, are deficient for the same reason.  They did not make any independent medical findings to undermine Dr. Kotha's opinion.

The ALJ's reliance on Dr. Sabourin's opinion was also insufficient.  The ALJ summarized Dr. Sabourin's findings as "essentially normal" and, thus, at odds with a diagnosis of fibromyalgia.  (AR45.)  However, Dr. Sabourin's findings were expressly limited to musculoskeletal disabilities.  As a board-certified orthopedic surgeon, Dr. Sabourin's examination of Plaintiff focused on her claimed musculoskeletal complications resulting from two automobile accidents.  (See AR516-20.)  He reviewed Plaintiff's various spine, shoulder, and wrist MRIs but concluded they were generally "unremarkable."  (AR519-20.)  Dr. Sabourin acknowledged Plaintiff's subjective complaints of pain, listing his impression as "[c]hronic pain syndrome, etiology undetermined" but concluded "these severe subjective findings . . . is (sic) disproportionate to the determinable condition as noted by MRIs."  (AR520.)  He did not, however, rule out the possibility they were due to fibromyalgia; instead concluding he could find "no orthopedic restrictions."  (AR520.)

B. MUSCULOSKELETAL IMPAIRMENT

Plaintiff argues the ALJ improperly disregarded the opinion of her treating orthopedic surgeon, Dr. McSweeney.  (See Doc. No. 21 at 2-3.)  Plaintiff claims the ALJ discredited Dr. McSweeney's findings in favor of those of the State Agency's examining physicians and, as a result of the disregard, failed to acknowledge her on-going impairments.

The ALJ did not err in discrediting Dr. McSweeney's opinion because the ALJ provided specific and legitimate reasons which are supported by substantial evidence. Reddick, 157 F.3d at 725.  Dr. McSweeney was an orthopedic surgeon who began treating Plaintiff for various musculoskeletal complications following a car accident in

2012.  Dr. McSweeney's RFC worksheet diagnosed Plaintiff with a knee and shoulder impairments that limited Plaintiff to standing or walking less than 2 hours during an 8-hour workday and sitting for only about 4 hours.  (AR995-97.)  Dr. McSweeney also opined that Plaintiff would need 4-5 breaks during an 8-hour workday, each of which should last between 10-15 minutes.  (Id.)

In finding Plaintiff capable of engaging in a full range of sedentary work, the ALJ rejected Dr. McSweeney's opinion.  The ALJ justified this decision based on the lack of objective medical findings supporting the severity of Plaintiff's musculoskeletal injuries.  First, MRI findings for Plaintiff's shoulder only revealed "minimal" arthritis and "mild" tendonitis.  (AR757.)  The MRI also found no tearing in the tendon and no muscle atrophy.  (Id.)  Second, MRI findings for Plaintiff's knee revealed "minor" tearing of the meniscus with normal ligaments and lateral supporting structures.  (AR755.)  These unremarkable objective findings were supported by the conclusions of the examining and non-examining physicians who found that Plaintiff's musculoskeletal systems were normal.  (E.g., AR520) ("Based on this evaluation, I could find no orthopedic restrictions for this claimant.").

These reasons provided by the ALJ are sufficient to meet his burden for rejecting treating physician Dr. McSweeney's opinion regarding Plaintiff's musculoskeletal impairments.  The ALJ thoroughly explored the medical record, stated his interpretations, and made findings supported by substantial evidence.  Heckler, 722 F.2d at 502.

C. FACTUAL DISPUTES

Plaintiff argues the ALJ erred with regards to various factual matters.  First, Plaintiff argues the ALJ erred by claiming her alleged onset date was June 2009 when Plaintiff contends she submitted an amended application stating her alleged onset date was March 25, 2010.  (Doc. No. 21 at 1-2.)  This amended application, however, does not appear in the administrative record.  (See generally Doc. No. 16.)  Plaintiff also argues that Dr. Sabourin's medical exam was inadequate and inaccurately reported.  (Doc. No. 21 at 2.)  Finally, Plaintiff makes various allegations regarding examiner bias.  (E.g.,

Doc. No. 49 at 15.)  None of these factual issues are properly before the Court.

The law regarding evidentiary matters at an administrative hearing is clear.  "When claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).  This rule allows the administrative judges to fulfill their role as fact-finder and encourages an efficient administration of justice.  Here, Plaintiff was represented by counsel at the administrative hearing but raised none of these issues.  (See generally AR60-77.)  Thus, the Court declines to address them now.

D. HARMLESS ERROR

An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination."  Molina, 674 F.3d at 1115 (internal quotation marks omitted).  The ALJ's decision to discredit Dr. Kotha was not harmless.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment, denies the Defendant's cross-motion for summary judgment, and remands for further proceedings consistent with this decision.  The Court makes no findings regarding the merits of Plaintiff's claim of fibromyalgia, only that the ALJ did not properly address the opinion of Plaintiff's treating rheumatologist.

**IT IS SO ORDERED.**

DATED:  February 24, 2017

Hon. Marilyn L. Huff
United States District Judge